morning. We have four cases on the calendar this morning. Three cases from the PCAB. Government employee case and a veteran's case and the last will be submitted in the briefs and not be argued. First case is Packers Plus Energy Services v. Baker Hughes Oilfield Operations 2018-1490. Mr. Cravey. Good morning, Your Honor. Do the parties agree Claim 1 is representative for 1-20? No, Your Honor. 1-20, yes, Your Honor, I do believe. With respect to the issues that are involved in this appeal, specifically the over the jetting passageway limitation, that is correct. Yes, Your Honor. With respect to Claim 21, the Board erred in relying exclusively on a non-existent limitation to uphold the validity of that claim. In fact, the parties agree. What's the non-existent limitation? The non-existent limitation was the over the jetting passageway limitation. But sealed was there. That's correct, Your Honor, sealed. They're different? They are different, Your Honor, in that the parties actually agree that Claim 21 does not impose the same structural requirement that the other independent claims require, that is 1, 8, and 16. The parties agree that Claim 21... Don't they shut off slow? The covering limitation over the jetting essentially is covering it up and sealing, isn't that equivalent? No, Your Honor, in that... Well, they're equivalent in that they're directed to the same aspect of the invention, and that is sealing the fluid communication between the central passageway and the jetting passageway. Now, they use different terminology to describe that feature. Claim 21 expressly describes that feature and that in a closed position, the shifting sleeve seals those two components, whereas Claims 1, 8, and 16 use the phrase over the jetting passageway to connote that feature. But it's the same essential feature, is it not? It's the same essential feature in respect to the functional aspect, in that we're sealing the fluid communications between the central passageway and the jetting passageway. Now, the Board went astray when it construed the over the jetting passageway to impose a physical requirement, that is, when it rewrote the phrase over the jetting passageway to mean covering the jetting passageway. It's Packer's plus position that the phrase over the jetting passageway connotes a functional relationship between the central passageway and the jetting passageway when the sleeve is in the closed position, that is, that it blocks fluid communications. With regard to 21, is there any way that the passageway could be sealed without it being covered? Well, yes, Your Honor, that's exactly what is shown in the Hutchinson-Sergio Maggio combination that was submitted to the Board in Packer Plus's petition. In fact, even under Baker Hughes's physical combination of the two references, you see there that the sliding sleeve blocks fluid communication, yet it's not physically covering, it's not straddling the jetting passageways like the embodiments in the patent specification. Supposing we agree with you that there was error on 21, but we agree with Baker Hughes on its alternative grounds. Page 5 of your reply brief seems to imply that you think we could at most vacate and remand the issue back for fact-finding. Am I correctly understanding your position? That's correct, Your Honor. That's the N. Ray Lee decision, in fact, where the Board said that, I'm sorry, where this Court said it was powerless to substitute alternative grounds not relied on by the Board to sustain the Board's decision. That's correct. There is law to the contrary, though. Your Honor, I think that I didn't see any law to the contrary cited in Baker Hughes's brief. In that N. Ray Lee decision, this Court cited the Supreme Court's Chenery Doctrine for that proposition. Even if, Your Honor, that assuming arguendo that there is, and I don't doubt you that you've perhaps found cases suggesting the other, I think in this case the appropriate remedy is, in fact, to vacate because the Board committed other errors, and specifically with respect to the over-the-jetting passageway limitation, even if we were going to assume that it imposed a physical limitation, the Board's construction of covering was too narrow, and certainly the Board's interpretation of its covering construction was too narrow. As we pointed out in our briefs, the Board construed its covering limitation as requiring the sleeve to physically cover the jetting passageway, that is straddle the jetting passageway. What the Board effectively did was import the preferred embodiment from the specification into the claims. Figure 2 illustrates a partial cutaway of the assembly and illustrates that when it's in its closed position, the shifting sleeve 22 straddles jet holes 23 and jet nozzles 24, right? In that embodiment, yes, sir. That indicates to me that over, quote that word, does mean more than just positioned above the jetting passageways, i.e. straddling or covering. Well, the problem I have with that is that we know that the claims use different terminology than what the patentee used in the spec. The patentee chose to describe that configuration in Figure 2 that you pointed to, using the language attached to the housing and straddling. When it came time to claim, the patentee used a broader word. The patentee used the word over, not straddling. The patentee understood how to describe that configuration but didn't do so in the claim. The question is whether or not we're going to give some effect to the patentee's presumably intentional choice to use broader, different terminology than what 21. Claim 21 doesn't recite any physical limitation on the position of the sliding sleeve with respect to the jetting passageways. What that tells me is that the patentee did not view that specific physical configuration that's described in the spec to be a key aspect of the invention because it's absent from Claim 21. In fact, the parties agree that that feature is not present in Claim 21. Standing back, we know that Claim 21 is in fact broader than the specific embodiments described in the patent specification. Let's talk about Claim 21 some more because the parties heavily dispute how we should address the lack of individualized analysis. The PTAB says, I'm quoting from them, because the issues in dispute are essentially the same, we address the independent claims together. Despite the way both parties treat the issues surrounding Claim 21, I'm not so sure that the PTAB was acting in such clear and making its initial statement that I just quoted. I'm saying this because turning to Packer Plus's petition, even the claim chart for each element of Claim 21 exclusively cross references arguments already made with respect to claim elements for Claims 1 and 16. And then Packer Plus says, I'm quoting, Claim 21 is a slightly reworded rendition of Method Claim 16. So taken together, it seemed to me that the PTAB was adhering at minimum to Packer Plus's request to treat Claim 21 together with the other challenge claims. I didn't respond to that. And there's a good reason for that, Judge Wallach. The reason for that is if you read the petition and specifically the reply, Packer Plus was looking at these claims in terms of fluid communication vis-a-vis the central passageway and the jetting passageway. And under that aspect, if the claims are properly construed to all be directed to fluid communication, and that is not imposing a physical requirement on the position of the sleeve, then they can be treated together. And under that, I think the Hutchinson and Sergio Maggio reference clearly shows a shifting sleeve that blocks fluid communication between the central passageway and the jetting passageway. And I think that's why in the claim charts you see the claims being argued together. So what you're saying is if we disagree with you about 1 through 20, we need to send back 21? I think that's under N. Ray Lee. I think that this Court's proper remedy is to vacate and remand. But again, I think even if we were going to look at Claims 1 through 20 as imposing a physical limitation on the positioning of the shifting sleeve versus the jetting passageway, I think it's appropriate for this Court to give some effect to the patentee's use of different language in the claim. I think over is broader than straddle. I think if the patentee wanted, in fact, none of the claims, not one single claim in the 838 patent uses the word straddle. Instead, they use the word over in these claims. And if the patentee had intended, as Baker Hughes is arguing, to limit this invention to the specific embodiments in the spec, the patentee could have used the word straddle. I mean, the specification shows the patentee understood how to describe that specific arrangement. And in fact, there are several places in this specification where the patentee expressly says this disclosure in the specification should not be treated as limiting to these claims. I think a person of skill in the art, reading the spec, taking that... That's just standard boilerplate. Well, Your Honor, I know that this Court has held that in different cases about standard boilerplate. But I think in this case, it's a little bit different. Here in this case, focusing the Court's attention specifically on APPX 54, column 2, lines 55 through 57, the patentee says, therefore, the described... There's a typo here. The described assembly and the same to selectively stimulate producing zones in a wellbore are meant to be illustrative and not limiting. This isn't the standard situation where a patentee just boilerplately says, hey, there's lots of other ways you can do this. And a person of skill in the art would know how to do it. And so you should hear the patentee's expressly saying, what I'm teaching you and showing you in the spec should not be treated as limiting on these claims. Taken together with different use of over versus straddle, I think it should be given some effect. I don't want to let you sit down without asking you about this because it matters to me. Packers Plus cites its expert testimony at Appendix 325 to support its assertions as to Hutchinson disclosing tailpipe strain. I want you to cite to surrounding expert testimony pages what's the expert's evidentiary basis for that conclusion. If it's not readily at hand, you might save your rebuttal time and come back with the answer. I would just say that I think the specific sites that we relied on in our petition, in our declaration, we relied on APPX 96. And in our declaration, we relied on APPX 325, paragraph 51. And in our reply, we relied on APPX 976. And I think the big thing to take away from, there's two things to take away from the tailpipe string argument that Baker Hughes is that they want to inject in the tailpipe string are specified in dependent claims. That is, a packer, tubulars hung from a packer, that's in a dependent claim. And the open hole concept that Baker Hughes wants to read in the tailpipe string is also specified in the dependent claim. So under the doctrine of claim differentiation, tailpipe string should not be so limited. But even stepping back from that, Baker Hughes' proposed construction of tailpipe is tubulars or other components extended below a packer. That's exactly what Hutchinson shows. It shows a cup type packer in figure one, and tubulars and other components extending down into the well below the packer. So even under Baker Hughes' proposed construction from tailpipe string, they lose. We'll save the rest of your time for rebuttal. Yes. Ms. Dubrow. Good morning, and may it please the court. I'd like to start with addressing the Chenery argument that Packers Plus raises in its contention that there's not case law contrary to Lee. As an initial matter, the quote they rely on from Lee is taken out of context. In the cited portion of Lee, this court rejected the appellee's proposed alternative grounds, not because those arguments were inappropriate basis for the court to rule on necessarily, but because they were grounds that had never been raised before the agency, and thus ruling on those bases would have deprived the other party of an opportunity to respond. The court was declining to address them because it would have been an APA violation, not because it was a And in fact, this court has said on numerous occasions, one of the best examples in In re Comiskey, that Chenery permits this court, and in fact, counsels this court should affirm on alternative basis, as long as doing so doesn't require the court to make a factual finding. One of the primary reasons that Chenery itself advises for that is that it would be inefficient for this court to send a case back to the board to rule on an issue that is clearly within this court's purview to address. And that rings particularly true in this case, where without some guidance from the court on these legal issues that the board clearly erred on with respect to Claim 21, a remand to the board would end up with virtually the same result from the board and we would be back here. Let me ask you about 21, since you've agreed with my positive statement regarding authority. I don't need it anymore. So did the parties below initially agree that Claim 21 was nearly identical to the other claims on appeal? I think the parties agreed that the claims were similar. There were some different arguments that were made. What did Baker Hughes argue? So in Baker Hughes' patent owner response, Baker Hughes argued with respect to Claim 21, with respect to all the claims, that the Hutchison-Sergeant-Mata combination doesn't disclose the tailpipe string as required by all the claims. We also argued that the Hutchison-Sergeant-Mata combination, a person with skill in the art, would not have been motivated to combine those references for a number of reasons. One is that the use of the cup-type Packers, which appear in the combination that Packers Plus asserted in its petition, would be inappropriate for use in an open-hole wellbore. You're going to merits and alternative merits as well, but what I'm interested in is, what did you argue about whether or not the Board should consider Claim 21 separately or not? Did it even come up? I personally was not involved in the IPR. I have reviewed all the pleadings in that case. One distinction that was made in Baker Hughes' briefing below is that Baker Hughes didn't present arguments relating to the over-the-jetting passageways limitation for Claim 21 because that specific language doesn't appear in Claim 21. So there was a lot of argument about what that limitation means in the context of 1.8 and 16 and whether that limitation was present in the combination, that Baker Hughes didn't address that argument to Claim 21 because that specific language doesn't appear in that claim. In its reply brief, Packers Plus argues that Baker Hughes focuses on cup-type packers as misplaced. They say because your expert admitted that the few types of packers that a person of skill would have used with a multi-zone simulation tool were all known prior to the patent filing date. What's your best response about how we should treat cup-type packers? Your Honor, Packers Plus did not assert a combination in in which the cup-type packers of Hutchison were removed. In fact, they stated repeatedly that the only modification to Hutchison and Sgt. Mata in that combination would be to replace or substitute is the language that they used Hutchison's annular chamber with Sgt. Mata's jetting nozzles and jetting passageways. They said nothing about whether you would replace the cup-type packer with any other type of packer. So it's irrelevant that other types of packers were known in the Packers Plus didn't make an argument that it would have been obvious to replace those cup-type packers with another type of packer. And the undisputed evidence here shows that a person of skill in the art would not have used those packers in an open-hole wellbore, one, because they wouldn't have sealed properly given the unevenness of the wellbore walls, and two, they would have possibly damaged the wellbore when you were putting the tool string into the well. Packers Plus didn't address that evidence at all, neither did the board, because the board improperly relied on a combination not asserted in the petition in which the cup-type packers had been removed. It was wholly inappropriate for the board to do that because Packers Plus never made the argument that those would have been removed or the argument that it would have been obvious to replace them with something else. That is a legal error that this court can rule on because there is no evidence that those packers would have been replaced, and the undisputed evidence is that a person of skill in the art would in fact not have used those in an open-hole wellbore. The argument with respect to the alternative basis with respect to the tailpipe string is similarly situated in that, as you pointed out, there's no evidence that they can really cite to other than their unsupported expert testimony that this tailpipe string was basically the same. I looked at the pages that and it's just it's their attorney argument and then their unsupported expert testimony is the extent of that. It was improper for the board to shift the burden to Baker Hughes on that element and they didn't even cite Packers Plus unsupported expert testimony. That evidence is just insufficient as a matter of law to support a finding that that element is disclosed by the Hutchison and Surgeant Mata combination. And I'd like to address a couple of issues with respect to Claims 1, 8, and 16 unless you have more questions on Claim 21. Packers Plus, at different times during his argument, one conceded that Claims 1, 8, and 16 over the jetting passageways imposes a structural requirement, but then later argued that it doesn't impose a structural requirement. They seem to be making the argument that it's structural when it suits them and it's not structural when it doesn't. It's clear when looking at this claim language that the patentee knew how to claim a functional relationship when it wanted to and it knew how to claim a structural relationship when it wanted to. Just comparing Claim 21 with Claims 1, 8, and 16 demonstrates that Claim 21 recites this sealing in the closed position and 1, 8, and 16 recites that it has to be covering the jetting passageways. Under the Doctrine of Claim Differentiation, the Board was correct to construe over the jetting passageways to require something more than just sealing the jetting passageways. And that's consistent with the description in the specification, which consistently describes the sleeve as physically covering the jetting passageways. Baker Hughes' invitation for the court to ignore that claim limitation and the physical and structural relationship that it imposes is improper. Does claim differentiation apply to a claim that isn't a dependent claim? Yes, Your Honor. Independent claim? Yes, Your Honor. I believe that it does. The patentee intentionally chose different language here and there's case law that says that we shouldn't ignore that, the patentee's choice of language. As for Packers Plus' argument that over should be concluded as above, Packers Plus concedes in its reply brief that the very first time it raised that argument was an oral argument. It didn't brief it to the Board. So our contention is that its failure to raise that in any of its briefing before the Board constitutes a waiver. Aside from that, the argument is inconsistent with the way that this invention is described in the specification. There's no description of the sleeve being located merely above the jetting passageways. In fact, when the patent describes vertical orientation of components, it uses uphole and downhole as opposed to above and below. And so over would not have been used to describe above and below either. It's clear in the context of the specification when the inventor was describing the location of the shiftable sleeve covering the jetting passageways that that's what they were referring to in the claim reciting over the jetting passageways. Anything further? No one gets penalized for not using all their time. I'm well aware of that, your honor. I would leave you with this closing thought that Packers Plus hasn't identified any legal error whatsoever in the Board's claim construction or its obviousness analysis with respects to those claims. So there's simply no basis for a reversal as to the Board's patentability determination on those claims. As to Claim 21, Packers Plus is just wrong that you all cannot reach that issue under Chenery. There is plenty of case law, which you have pointed out yourselves today, that not only permits but encourages you to reach those issues. And importantly, the alternative grounds presented by Baker Hughes do not present any factual issue that would prevent you from reaching those issues. They all present purely legal issues where there are undisputed facts that are merely applied to the statute. And it's apparent in light of those undisputed facts that Packers Plus has completely insufficient evidence to support its argument for unpatentability. For those reasons, we would ask that you affirm the Board's decision. Thank you. Mr. Cravey has some rebuttals on. A minute plus. Just very quickly, Your Honor. I do want to take issue in that we do dispute the conclusions of the Board. And basically, just taking a step back, I think that what the Board did here, did wrong, is contrary to this Court's decision in Enri Moet and Enri Keller, the Board relied on a bodily physical incorporation of the features of Sir Jamaja into Hutchinson. That's an improper obviousness analysis. In Enri Moet, this Court said the test for obviousness is what the references combined would suggest to a person of skill in the art. Taking that even further into KSR, the Supreme Court said that the combination of familiar elements using known techniques are usually obvious when they do nothing more than produce predictable results. And that's exactly the case here. Twenty years before the filing of the 838 patent, Hutchinson was filed. It was known to use multi-zone stimulation in a wellbore. Even Hutchinson itself talks about that steam injection into the well was known. The claims that issue in the 838 patent are obvious. I do want to touch on very quickly the tailpipe string argument because I think it's important that, as this Court pointed out, that Baker Hughes's expert acknowledged that it was known to stimulate wells in open-hole wellbores, and Baker Hughes's expert acknowledged that all these different types of packers were known in the art prior to the filing of the 838 patent. Under Enri Moet, the Board is entitled as, I'm sorry, under Rivalma, cited in our reply brief, the Board is entitled to draw its own inferences from arguments by the parties. And that's exactly what the Board did here, relying on Baker Hughes's own statements to find that tailpipe string was disclosed by the Hutchinson elements. Thank you. Thank you, counsel. The case will be submitted.